IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

NORRENBERNS FOODS, INC.

    Debtor.

Chapter 11

Case No. 21-30825

## OPINION

This matter is before the Court on the Debtor's Motion to Sell and the United Food and Commercial Workers Unions and Employers Midwest Pension Fund's ("the Fund") objection thereto. The issue before the Court is whether the sale of the Debtor's assets pursuant to Section 363(f) of the Bankruptcy Code may be sold free and clear of successor liability claims relating to the Debtor's withdrawal from the Fund's pension plans.

## FACTS

The Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code on December 7, 2021. The Debtor, Norrenberns Foods, Inc., operates and manages a retail grocery store in Mascoutah, Illinois, commonly known as Tom's Supermarket. The Debtor previously owned other grocery stores throughout southern Illinois, all of which were ultimately forced to close, leaving only the Mascoutah location grocery store. The Fund is a multi-employer pension fund that provides retirement, disability and death benefits to retail food employees in the Midwest who are covered by collective bargaining agreements between their employers and certain local unions affiliated with the United Food and Commercial Workers International Union, AFL-CIO. The Debtor was a party to one of those collective bargaining agreements. The Fund is a creditor of the Debtor with an unsecured claim in the amount of $4,774,800.54. The majority of the Fund's claim arises as the result of "withdrawal liability" under the federal Employee Retirement Income Security Act ("ERISA").

1

As the other grocery stores owned by the Debtor closed, the union pension withdrawal liabilities were left to be paid by the remaining stores until only the Mascoutah store remained. This left the Debtor unable to service its secured indebtedness to Citizens Community Bank, the only entity with a security interest in the Debtor's real estate, inventory, and equipment, and contend with its various union liabilities. Thus, the Debtor sought bankruptcy protection. On April 7, 2022, the Debtor filed its Motion to Sell seeking the Court's approval of an Asset Purchase Agreement between the Debtor and Purchaser, Norrenberns Properties, LLC and Betty Ann Market, Inc. The Motion to Sell seeks an order approving the sale of substantially all of the Debtor's assets used in the operations of the grocery business "free and clear of any and all liens, claims, interests and encumbrances." *Debtor's Motion to Sell,* ECF Doc. No. 50, p. 4 n. 14. The Motion also states that such sale "shall be free and clear of any and [sic] claims in any way related to such collective bargaining and other labor agreements." *Id.* at n. 3.

Citizens Community Bank Citizens ("Citizens") holds a first and prior lien against and security interest in all of the Debtor's assets at issue. Citizens filed an objection to the Motion, but it has since been resolved, and Citizens has agreed to a carve-out from the proceeds of the sale of the assets in the amount of $40,000.00. The Subchapter V trustee also filed an objection to the Motion, which was withdrawn.

The Fund filed an objection to the Motion to Sell arguing that the Bankruptcy Court lacks jurisdiction to enjoin the successor liability claims and that the sale of the Debtor's assets pursuant to 363(f) of the Bankruptcy cannot extinguish the Fund's successor liability claims. The Debtor filed a reply to the Fund's objection arguing that there is ample authority in the Seventh Circuit to approve the sale transaction free and clear of successor liability. A hearing was

conducted on May 17, 2022 where initial arguments were heard, and an evidentiary hearing was scheduled for June 1, 2022.

On June 1, 2022, the Court heard testimony from John Norrenberns, one of the current owners of Norrenberns Foods, Inc. John Norrenberns owns the store with his brother, Don Norrenberns. John Norrenberns testified that Norrenberns Foods Inc. used to consist of several grocery stores throughout Illinois, including such places as Freeburg, New Athens, Smithton, Nashville. These stores gradually closed their doors due to the competition from large corporate stores. Each time one of the stores closed, the debt from the closed grocery store would fall onto the remaining open stores, including substantial union pension withdrawal liabilities. Because the Mascoutah store is the last remaining grocery store owned by the Debtor, the pension fund liability has fallen onto this store. In 2019, the Debtor began searching for a purchaser of the Mascoutah grocery store. Initially, the Debtor reached out to Associated Wholesale Grocers for assistance in finding a purchaser, but they were unsuccessful. Associated Wholesale Grocers is the main supplier of food to the Debtor. An employee of the Mascoutah store expressed an interest in purchasing the store, but that sale did not conclude. In 2021, the Debtor began negotiations with Craig Norrenberns. Craig Norrenberns and his wife are the owners of Norrenberns Properties, LLC and Betty Ann Market Inc. Citizens Community Bank was also included in these negotiations since it holds a validly perfected and enforceable lien on the assets. Citizens believed the terms of the Asset Purchase Agreement were fair. John Norrenberns testified that no one else has approached Norrenberns Foods Inc. showing an interest in buying the store.

The Court also heard testimony from the purchaser, Craig Norrenberns, and found him to be sincere, knowledgeable, and credible. Craig Norrenberns ("Purchaser") is the nephew of Don

and John Norrenberns and has worked in the grocery store business with his father for many years. However, he has never worked for Norrenberns Foods, Inc. or the Mascoutah grocery store in any capacity. Purchaser formed Norrenberns Property, LLC and Betty Ann Market Inc. for the purpose of acquiring the Debtor's assets. The sale price was determined after a thorough financial review of the business by Purchaser and negotiation of the purchase price. Purchaser stated that neither Don nor John Norrenberns will be employed or have any interest in the property once the sale is completed. They will not receive any personal compensation from the sale either. Because he intends to purchase the grocery store assets, Purchaser plans on continuing to run it as a grocery store.[1] He had studied the customer base and was familiar with the competition, the commissary at the nearby Air Force base. Initially, he plans to keep the grocery store similar to how it currently is designed to please customers. Ultimately, he will remodel and rebrand the store, expanding the services available. Purchaser testified that he would not purchase the Debtor's assets if the Fund's successor liability is not extinguished by the sale.

Therefore, the Court must determine if a sale under Section 363(f) of the Bankruptcy Code can extinguish the Fund's potential successor liability claims against the buyer of the Debtor's assets.

## JURISDICTION

"Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section

---

[1] It is understandable that the grocery stores assets can only be used to operate a grocery store. In response to a question from Debtor's counsel regarding whether he would operate a sporting goods store on the premises, Purchaser stated, "It's hard to play baseball with peanut butter jars."

4

158 of this title." 28 U.S.C § 157(b)(1). The Debtor's Motion seeks the Court's approval of a sale under 11 U.S.C. § 363. This proceeding arises under Title 11 and is a core proceeding, so the Bankruptcy Court has jurisdiction.

## ANALYSIS

Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property … *free and clear of any interest in such property* of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added).

Section 363(f) permits a trustee, or a debtor in possession, to sell property free and clear of an interest in such property provided at least one of the five enumerated conditions are satisfied. One of these conditions is that "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). The Court agrees that the interest in question is one for which the Fund could be compelled to accept a money satisfaction, as evidenced by the proof of claim filed by the Fund which indicates the monetary value of the claim. The parties dispute the meaning of the term "interest" in Section 363(f) of the Bankruptcy Code. The Fund asserts that its withdrawal and successor liability claims are not an interest in the property being sold within the meaning of the section and cannot be extinguished by the sale order. The Debtor, on the other hand, argues that the Court has

authority to authorize the sale of Debtor's assets "free and clear of any interest," including the Fund's claims of successor liability.

The Bankruptcy Code does not specifically define the term "interest" as used in Section 363(f). However, "the trend seems to be in favor of a broader definition that encompasses other obligations that may flow from ownership of the property." 3 COLLIER ON BANKRUPTCY ¶ 363.06 (2022). "[T]he Code itself does not suggest that 'interest' should be understood in a special or narrow sense; on the contrary, the use of the term 'any' counsels in favor of a broad interpretation." *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 545 (7th Cir. 2003) (citing *United States v. Gonzales,* 520 U.S. 1, 5, 117 S. Ct. 1032, 137 L. Ed. 2d 132, (1997)).

The scope of extinguished interests has been broadly interpreted to include possessory interests, employment related claims, and withdrawal liability. *See Precision Industries, Inc. v. Qualitech Steel SBQ, LLC,* 327 F.3d 537, 545 (7th Cir. 2003) ("[W]e likewise conclude that the term 'any interest' as used in section 363(f) is sufficiently broad to include Precision's possessory interest as a lessee."); *Faulkner v. Bethlehem Steel/Int'l Steel Grp.,* 2005 WL 1172748, at *3 (N.D. Ind. Apr. 27, 2005) (holding that 11 U.S.C. § 363(f) gave the bankruptcy court authority to transfer assets free and clear of employment discrimination claims); *In re K & D Industrial Services Holding Co., Inc.,* 602 B.R. 16 (E.D. Mich. 2019) (holding that successor liability claim arising out of buyer's purchase of debtors' property, while not an *in rem* interest, was nonetheless an "interest in such property" and the assets could be sold free and clear of successor liability claims, including claims by the fund for withdrawal liability).

The Fourth Circuit began the trend towards a more expansive reading of the phrase "interests" in the case of *In re Leckie Smokeless Coal Co.,* 99 F.3d 573 (4th Cir. 1996). In *Leckie*,

the debtors sought to sell their assets to a purchaser who, as a successor in interest, would not be liable for the debtor's future premium payment obligations to retirement benefit plans required under the Coal Act. *Id.* at 575-576. According to the sale order, the assets would be sold free and clear of the claims under Section 363(f). *Id.* at 577. The benefit plan argued that the bankruptcy court could not extinguish successor liability because the claims were not "interests in property" within the meaning of Section 363(f). *Id.* The Fourth Circuit, however, opted for an expansive view of the phrase "any interest in property," stating,

> [W]hile the plain meaning of the phrase 'interest in such property' suggests that not all general rights to payment are encompassed by the statute, Congress did not expressly indicate that, by employing such language, it intended to limit the scope of section 363(f) to *in rem* interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.

*Id.* at 582.

Accordingly, the Fourth Circuit held that under 363(f), the Bankruptcy Court could extinguish all successor liability claims against the purchasers by entering an order transferring the assets free and clear of those claims. *Id.*

The Third Circuit has likewise broadly interpreted the term "interests." *In re Trans World Airlines, Inc.,* 322 F.3d 283 (3rd Cir. 2003). The debtor in that case, Trans World Airlines ("TWA"), had issued travel vouchers to certain employees in settlement of sex discrimination claims ("Knox-Schillinger claimants") that arose prior to the filing of the bankruptcy case. *Id.* at 285. Additionally, there were pending employment discrimination claims against TWA by the EEOC when the bankruptcy case was filed. *Id.* at 285-86. During the pendency of its Chapter 11 bankruptcy, TWA sold its assets to American Airlines under Section 363(f) of the Bankruptcy Code. *Id.* at 286. The sale order extinguished successor liability and enjoined all persons from enforcing successor liability claims against the buyer. *Id.* at 286-87. The Third Circuit had to

7

determine whether the travel voucher program and employment discrimination claims were an "interest in property" that could be extinguished by a Section 363(f) sale order. *Id.* at 288. The Court noted the trend toward a more expansive interpretation that "encompasses other obligations that may flow from ownership of the property." *Id.* at 289. Relying on *Leckie*, the Court concluded that the claims were "interests in property":

> Here the Airlines correctly assert that the Travel Voucher and EEOC claims at issue had the same relationship to TWA's assets in the § 363(f) sale, as the employee benefits did to the debtors' assets in *Leckie.* In each case *it was the assets of the debtor which gave rise to the claims*. Had TWA not invested in airline assets, which required the employment of the EEOC claimants, those successor liability claims would not have arisen. Furthermore, TWA's investment in commercial aviation is inextricably linked to its employment of the Knox-Schillinger claimants as flight attendants, and its ability to distribute travel vouchers as part of the settlement agreement. While the interests of the EEOC and the Knox-Schillinger class in the assets of TWA's bankruptcy estate are not interests in property in the sense that they are not in rem interests, the reasoning of *Leckie* and *Folger Adam* suggests that they are interests in property within the meaning of section 363(f) in the sense that they arise from the property being sold.

*Id.* at 289–90 (emphasis added).

The Court further noted that since the claims were both subject to monetary valuations under 363(f)(5), the sale could occur since one of the conditions of 363(f) had been satisfied. *Id.* at 290-91. Finally, the Court validated its opinion with a justification regarding the policy behind the Bankruptcy Code, noting that, "To allow the claimants to assert successor liability claims against [the purchaser] while limiting other creditors' recourse to the proceeds of the asset sale would be inconsistent with the Bankruptcy Code's priority scheme." *Id.* at 292. Ultimately, the Court concluded that Section 363(f) authorized a sale free and clear of successor liability claims. *Id.* at 293.

It is with good reason that the broader definition of the term "any interest" has been adopted by several courts. Since "lien" is a defined term under the Bankruptcy Code,[2] Congress would have used the term "lien" instead of "interest" had it intended to restrict the scope of Section 363(f) to liens. Congress did use the term "lien" in Section 363(f)(3), which applies when "such an interest is a lien," suggesting that liens are a subcategory of "interest." *See In re Trans World Airlines, Inc.*, 322 F.3d at 290 (citing *In re WBQ Partnership*, 189 B.R. 97 (Bankr.E.D.Va.1995)).

Similar to the employment-related claims of *Leckie* and *TWA*, the Fund's successor liability claim here is an "interest in such property" for purposes of Section 363(f) in the sense that the Fund's claim only arises from the very grocery store assets being sold. The Debtor owns a grocery store, which led the Debtor to hire employees, which caused the liabilities to build up. No claim would arise, but for the sale of the assets and the operation of the assets by the buyer. It is the buyer's acquisition of the assets and his intent to operate a grocery store that gives rise to the Fund's contention that the buyer will be subject to successor liability. At trial, in an attempt to establish transferee liability, counsel for the Fund asked numerous questions connecting the purchase of the assets to the operation of a grocery store. The Fund's conclusion was that the use of the assets as a grocery store established transferee liability. Thus, the Fund established that its "interest" arose from the grocery store assets. If the Court were to follow the Fund's theory, the sale of the grocery store assets would have to be for something other than a grocery store to avoid the successor liability claim. This would severely impair the value of the assets to the detriment of the secured lender and the bankruptcy estate. The sale in the instant case is to an independent third party. Without the transfer and use of the assets by the buyer, no such claim

---

[2] "The term 'lien' means charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

could be made. Additionally, the asset sale is consistent with the Bankruptcy Code's priority scheme. The sale of the assets to the buyer in accordance with the Asset Purchase Agreement is in the best interests of the estate and the creditors and provides the best chance for maintaining operations and jobs for the Debtor's employees. The sale is necessary because the Debtor's ability to continue to operate is at risk, and the sale provides the greatest benefits to the Debtor's estate and its creditors.

Debtor argues that *In re Vista Mktg. Grp. Ltd.*, 2014 Bankr. 2014 WL 1330112 (Bankr. N.D. Ill. Mar. 28, 2014) is compelling. The Court agrees. In *Vista,* the Court enforced its own order pursuant to section 363(f) which authorized the sale of the debtor's assets free and clear of claims and interests to preclude successor liability claims by the Illinois Department of Revenue. *Id*. at *2. In doing so, the court noted the broad scope of the term "interest" in section 363(f) and the trend to construe the term expansively. *Id*. at *6. ("[T]he term 'interest' was selected by Congress to avoid 'rigid and technical definitions drawn from other areas of the law.'") ("[T]he majority trend construes it expansively to encompass 'other obligations that may flow from ownership of the property.'"). Further, in enforcing its order that extinguished successor liability, the Court also expressly rejected the claimant's reliance on *Zerand-Bernal Group v. Cox,* 23 F.3d 159 (7th Cir. 1994), and *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48 (7th Cir. 1994). *Id*. at *7.

Here, the Fund also relies on *Zerand-Bernal Group v. Cox*, to argue that "the Seventh Circuit has unequivocally ruled that a bankruptcy court lacks jurisdiction to enjoin successor-liability actions following a sale under section 363 of the Code." *Limited Objection of UFCA to Debtor's Motion to Sell*, ECF Doc. 58, p. 5, n.16. However, just as it was in *Vista*, *Zerand* is factually distinguishable here as well.

In *Zerand*, the bankruptcy court approved the sale of debtor's assets "free and clear of liens, claims or encumbrances of any sort or nature," and reserved jurisdiction to enforce its order. *Zerand,* 23 F.3d at 161. Four years after the closing of the bankruptcy case, a products liability suit was filed against the purchaser of the debtor's assets, who claimed the purchaser was liable under the theory of successor liability. *Id.* The purchaser subsequently filed an adversary complaint to reopen the bankruptcy case and enjoin the products liability case that was brought against it. *Id*.

The Court noted *in dicta* that Section 363(f) was not relevant to the claim because the plaintiff was "not attempting to enforce a lien." *Id*. at 163. Instead, the case dealt with an unknown future product-liability tort creditor whose claim had not arisen by the time of the sale and who was not known prior to the sale of the debtor's assets. *Id*. The court never discussed the term "interest" in Section 363(f) or the possibility that such term included successor liability claims. Ultimately, the Court concluded that the bankruptcy court lacked jurisdiction to enjoin the products liability case, noting that the plaintiff in the products liability case was not even a party to the bankruptcy proceeding and the incident occurred after the bankruptcy proceeding had wound up. *Id.* at 163-64.

In this case, unlike *Zerand*, the Fund holds existing claims against the Debtor at the time of the sale, and the successor liability claims constitute interests in the Debtor's property. This property may be sold free and clear of the Funds' interests under section 363(f)(5) of the Bankruptcy Code.[3] Although the Fund argues that *Zerand* stands for the proposition that the Court does not have jurisdiction to enter an order authorizing the Debtor to sell its assets free and

---

[3] "The trustee may sell property … free and clear of any interest in such property of an entity other than the estate, if... such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C 363(f)(5).

11

clear of successor liability claims. *Zerand* explicitly states, "a cleansing of the assets in a bankruptcy sale" of all liens and other encumbrances "is a valid power of the bankruptcy court." *Id. a*t 163. The Fund's reliance on *Zerand* is not applicable.

The Fund's reliance on *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, is also misplaced, as it does not involve a Section 363(f) sale at all. *Chi. Truck Drivers,* 59 F.3d at 49 n. 2 ("We need not decide whether New Tasemkin's acquisition of Old Tasemkin's assets sufficiently approximated a trustee sale, which under § 363(f) can be made free and clear of existing interests, to overcome this distinction…. As will be made clear, this case does not directly implicate the Bankruptcy Code, since the underlying bankruptcy proceeding is long over."). Therefore, the Court does not find this case persuasive in its determination of the meaning of "interests" in a Section 363(f) sale.

Section 363(f) of the Bankruptcy Code permits a sale of property "free and clear of any interest in such property." The Court follows the majority trend to interpret the term "interest" broadly and finds that the Fund's successor liability claims are an "interest" for purposes of Section 363(f) of the Bankruptcy Code. Accordingly, the Debtor is authorized to sell its assets free and clear of the Fund's successor liability claims.

## **CONCLUSION**

For the reasons set forth above, the Objection filed by United Food and Commercial Workers Unions and Employers Midwest Pension Fund is OVERRULED. The Debtor's Motion to Sell (Doc. #50) is GRANTED. A separate order shall enter.

ENTERED: July 8, 2022

                                        /s/ Laura K. Grandy
                                  UNITED STATES BANKRUPTCY JUDGE